UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 8:08-CR-0450-T-33EAJ

CARL BLAIR,
GEORGE AUGUSTUS,
DENEIL TENASHEL CAMPBELL, and
ANTONIO MAURICE MCCLAIN
_____/

## REPORT AND RECOMMENDATION

Before the court are Defendant George Augustus' **Motion to Suppress Statements and Request for Evidentiary Hearing** (Dkt. 58) and the Government's **Response** (Dkt. 65). An evidentiary hearing and oral argument have been held. For the reasons stated herein, I recommend that the motion to suppress be granted.

### Findings of Fact

The following facts are established by a preponderance of credible evidence:

1. Defendant is a 25-year-old Jamaican citizen. Prior to September 17, 2008, Defendant was convicted in Florida of misdemeanor possession of marijuana and spent thirty (30) days in the Polk County Jail. He has no physical or mental infirmities.

2. On September 17, 2008 at approximately 1:40 p.m., Defendant was arrested in Polk County, Florida for federal offenses and transported to a Polk County Sheriff's Office substation.

3. Between 2:30 and 3:00 p.m., Special Agent Michael Coad ("Agent Coad") with the Bureau of Alcohol, Tobacco, and Firearms ("ATF") began interviewing Defendant in English.[1]

4. At all times during the interview, Defendant's hands were cuffed behind his back by a "flex

---

[1] The interview was videotaped, however, Agent Coad testified he was unaware of this fact.

cuff" device.

5. For the first several minutes of the interview, Agent Coad obtained routine information from Defendant, such as Defendant's age, birth date, and county of origin, which Agent Coad then transcribed onto a financial affidavit form (Defendant's Ex. 1). These forms were furnished by the U.S. Marshal to Agent Coad for booking purposes.

6. Approximately eight minutes into the interview, Agent Coad informed Defendant that the form "means you don't have any money in the bank." Defendant shifted his hands to his right side, and signed the financial affidavit form without reading it.[2]

7. Agent Coad then asked Defendant if he could "read and write." Defendant replied "What?" Once Agent Coad repeated the question, Defendant replied "Yea" and shook his head affirmatively.

8. Agent Coad presented a "Miranda waiver form" (Government's Ex. 1) to Defendant and read aloud the contents of the form, which included a statement of Miranda rights.

9. The following exchange then took place:

    Agent Coad:    We're going to have you sign here and print your name here if you want to talk to me. If you want a lawyer that is your right. You can wait to talk to a lawyer before you talk to me. Okay. The choice is yours.

    Defendant:    So what if I talk to you? What's the charge and all of that?

    Agent Coad:    You are being arrested for conspiracy to traffic in cocaine, okay, and you're also being arrested for armed narcotics trafficking.

---

[2] Although the title of the form is "Financial Affidavit In Support Of Request for Attorney, Expert, or Other Court Services Without Payment," the court does not construe Defendant's signing of the form as a request for counsel because Defendant did not read the form before or after signing it. Further, Agent Coad's unrebutted testimony indicates that this is a form required by the U.S. Marshal prior to producing a defendant in court.

| | |
|---|---|
| Defendant: | Conspiracy to traffic cocaine . . . |
| Agent Coad: | Yes. |
| Defendant: | . . . and conspiracy for what? |
| Agent Coad: | And conspiracy to traffic in cocaine, trafficking in cocaine, and armed narcotics trafficking. |
| Defendant: | What's that? |
| Agent Coad: | Because you guys had a gun. Okay? Those are the charges that are going to be against you. Okay?[3] |
| Defendant: | How much . . . how long will I gonna do in jail? |
| Agent Coad: | Well those are minimum mandatories, I don't know what your criminal history is but it's a serious offense and its probably upwards of fifteen years in federal prison. Okay. Now I need to know if you want to talk to me and you want to answer questions about this case and what's going on and what's happening. And if you want some consideration for your information, like I can tell the prosecutor, hey you were straightforward, you gave up everything, you told me about this, you told me about that, you told me about this. You know dude everything you said was on tape . . . everything . . . the case is done, you're done. Now we just gotta worry about saving your ass. And if you want to do the time, dude tell me you want to talk to a lawyer and I'll do this thing. That's fine. |
| Defendant: | I don't want to do no time man. |
| Agent Coad: | I'm telling you man, if you want to do less time, talk to me and we will see what is going on and we will go from there. |
| Defendant: | I want to talk to you.[4] |

---

[3] At this point, an individual identified at the hearing as Hillsborough County Sheriff's Office Detective R.J. Lazzara ("Detective Lazzara") entered the room.

[4] Immediately after this exchange, Special Agent Hanes ("Agent Hanes") with Immigration and Customs Enforcement ("ICE") entered the room.

10. Agent Coad printed Defendant's name on the Miranda waiver form and Defendant, with his hands cuffed behind his back, signed his name on the form. Agent Coad and Detective Lazzara immediately signed the form as witnesses and Detective Lazzara left the room.

11. Defendant then made several incriminating statements to Agent Coad. Among other things, Defendant confessed to his participation in events earlier that day involving cocaine and a gun.

12. At approximately 2:50 to 3:20 p.m., Agent Coad concluded his twenty-one minute interview of Defendant. No firearms were displayed at any time during the interview.[5]

13. Immediately following Agent Coad's interview, Agent Hanes interviewed Defendant.

14. Subsequently, a detective with the Polk County Sheriff's Office interviewed Defendant.

15. Audio and video recordings were made of each interview (Government's Ex. 2).

16. All three interviews were concluded by 5:00 p.m. that day.

17. The next day, September 18, 2008, at 12:05 p.m., Honorable Mary S. Scriven, U.S. Magistrate Judge, signed a criminal complaint in this matter charging defendant with one federal felony charge (Dkt. 1).

18. Later that day, at approximately 2:30 p.m., Defendant appeared before Judge Scriven and was appointed counsel (Dkt. 2).

## Conclusions of Law

Defendant asserts that any waiver of Miranda rights during his interview with Agent Coad was invalid because 1) the Miranda waiver form was in English but Defendant's "native language"

---

[5] Although Defendant asserts in his motion that law enforcement displayed weapons or firearms, no evidence was presented at the hearing supporting this assertion. At most, Agent Coad wore a firearm in an ankle holster which would not have been visible to Defendant.

is Jamaican; 2) Defendant lacked "cultural knowledge" of his Miranda rights; 3) Agent Coad implied that Defendant would spend less time in jail if Defendant spoke with Agent Coad without requesting a lawyer; 4) law enforcement displayed various weapons and firearms before and during the interview; and 5) Defendant was handcuffed and shackled when he signed the waiver form. The Government responds that Defendant's age, education, familiarity with the criminal justice system, demeanor during the interview, ability to communicate with Agent Coad in English, and manifested awareness of his Miranda rights reflect that he knowingly and voluntarily waived those rights.

**I. Waiver of Miranda Rights**

Before questioning a person who has been taken into police custody, law enforcement must inform the person of 1) the right to remain silent, 2) the possibility that the person's statements could later be used as evidence, and 3) the right to the presence of retained or appointed counsel. Miranda v. Arizona, 384 U.S. 436, 444 (1966).

Nonetheless, a defendant "may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." Id. at 444. An express written waiver of Miranda rights "is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." North Carolina v. Butler, 441 U.S. 369, 373 (1979). Rather, in assessing the validity of such a waiver, a court must undertake the following two-part inquiry:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

5

Moran v. Burbine, 475 U.S. 412, 421 (1986) (citations omitted); see also Arizona v. Fulminante, 499 U.S. 279, 286 & n.2 (1991) (identifying some of the factors a court may consider in analyzing the totality of the circumstances, including a defendant's age, education, and intelligence). The prosecution must establish the defendant's waiver of Miranda rights by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168 (1986).

There is no dispute that Defendant was in custody at the time he was interviewed by Agent Coad and that Agent Coad properly read Defendant his Miranda rights from the Miranda waiver form which Defendant subsequently signed. Defendant nonetheless insists that the totality of circumstances surrounding the interview undermines the validity of his waiver.[6]

Defendant first contends that as a native Jamaican he was unable to comprehend Agent Coad's "American" English. Yet when Agent Coad asked Defendant if he could read and write, Defendant responded affirmatively in English. Defendant engaged in a lengthy conversation with Agent Coad in English covering Defendant's personal information, his Miranda rights, and his participation in the events leading to his arrest. Moreover, Defendant never asked for an interpreter and the record does not suggest interpretation was ever necessary.[7]

Defendant's contention that his cultural background inhibited appreciation of his Miranda

---

[6] Defendant did not testify at the suppression hearing. However, the burden of establishing a valid waiver remains the Government's and the court must apply an objective standard.

[7] Accordingly, Defendant's purported difficulties with "American" English are exaggerated and did not preclude him from comprehending his Miranda rights. See United States v. Longoria, 229 F. App'x 885, 888 (11th Cir. 2007) (per curiam) (finding defendant waived Miranda rights despite alleged inability to understand English where defendant spoke fluent English in conversations with law enforcement and never requested or needed an interpreter); United States v. Briscoe, 69 F. Supp. 2d 738, 742 (D. V.I. 1999) (finding Jamaican defendant effectively waived his Miranda rights despite alleged difficulty comprehending "American" English).

is also without merit. At the time of his arrest, Defendant had lived in the United States for approximately eight years, where he was arrested at least one time prior to his arrest in this case. Defendant manifested no confusion as to the nature of his rights and sought no clarification at the time they were read to him. See e.g. United States v. Glover, 431 F.3d 744, 748 (11th Cir. 2005) (per curiam) (approving district court's finding of waiver where defendant "interacted normally and intelligently with the arresting agents and . . . was familiar with the criminal justice system"); see also United States v. Adem, 18 F. App'x 512, 513 (9th Cir. 2001) (per curiam) (finding Miranda waiver valid despite defendant's alleged difficulties due to cultural background and difficulties with English language where defendant conversed with law enforcement in English, did not request an interpreter, and appeared to understand his rights); United States v. Su, No. 97 CR. 319(MBM), 1997 WL 695655, at *7 (S.D. N.Y. Nov. 6, 1997) (noting the law does not require Miranda warnings be tailored to a defendant's cultural background and country of origin).

However, Agent Coad's statements prior to Defendant's waiving his rights about the benefits of talking with the agent were misleading and contradicted the Miranda warnings. Although Defendant was informed that any statements he made could be used against him as evidence in the future, less than two minutes later during the interview Agent Coad suggested that Defendant should talk if he hoped to "do less time." Moreover, although Agent Coad informed Defendant of his right to the presence of counsel, Agent Coad also indicated that requesting a lawyer would be equivalent to expressing a desire to "do the time."

In United States v. Quinn, 123 F.3d 1415 (11th Cir. 1997), the defendant claimed his Miranda waiver was invalid because law enforcement discouraged the defendant from asserting his rights. Defendant testified that he was told "cooperation" could lead to a lesser sentence and that

7

"it would be difficult to cooperate once an attorney had been appointed." Id. at 1423-24. By contrast, the government maintained that it "'simply advised [the defendant] of the consequences that could flow from delaying any attempt at cooperation.'" Id. at 1424. The Eleventh Circuit affirmed the district court's conclusion that the Miranda waiver was valid, reasoning that the defendant was adequately advised of his rights when law enforcement read them to him. Id. The court pointed out that the issue of the defendant's potential sentence was initially raised by the defendant and that the agent's estimate of the defendant's sentence was realistic. Id. Further, the defendant's testimony that he was threatened was not entirely credible. Id. Finally, the court emphasized that any inculpatory statements were made before law enforcement discouraged the defendant from requesting counsel. Id.

In contrast, in Hart v. Attorney General of Fla., 323 F.3d 884 (11th Cir. 2003), the Eleventh Circuit held that misleading statements as to the nature of Miranda rights can in some cases void a waiver of those rights. There, after the defendant signed a Miranda waiver form, he asked to speak to a detective who he trusted and inquired of her as to the "pros and cons" of asserting his right to counsel. Id. at 894. The detective responded that a lawyer would protect the defendant's rights, would tell him whether or not to answer questions, and would generally be there to assist. Id. However, the detective also warned the defendant that the "con" of requesting counsel was "'I'm going to want to ask you questions and he's going to tell you you can't answer me.'" Id. As noted by the Eleventh Circuit, "[t]he reason for requiring a lawyer during custodial interrogation is to protect a suspect's privilege against self incrimination, yet, [the detective] in effect told [the defendant] that this was the disadvantage of having a lawyer." Id.

In Hart, the detective's statements regarding the pro and cons of requesting counsel were

supplemented by another problematic assertion concerning the right to remain silent. Specifically, the detective informed the defendant that "'honesty wouldn't hurt him'" which the court found "simply not compatible with the phrase 'anything you say can be used against you in court.'" Id. Rather, "[t]he former suggested to [the defendant] that an incriminating statement would not have detrimental consequences while the latter suggested (correctly) that an incriminating statement would be presented at his trial as evidence of his guilt." Id. The Eleventh Circuit concluded that the totality of the circumstances proved that the defendant's waiver of his Miranda rights was not voluntary, knowing, and intelligent because the defendant trusted the detective who in turn offered conflicting statements as to the nature of Miranda rights. Id. at 895. Although the defendant was properly advised of his Miranda rights, the detective's subsequent statements confused the nature of those rights and undermined the validity of the waiver. See also United States v. Beale, 921 F.2d 1412, 1435 (11th Cir. 1991) (finding district court erred in admitting statement where law enforcement told defendant that signing Miranda waiver "would not hurt him" because this contradicted warning that defendant's statements could be used against him).

Here, Defendant was adequately informed of his Miranda rights when Agent Coad read them to Defendant from the Miranda waiver form. Nonetheless, Defendant did not sign the Miranda waiver form or otherwise waive his rights immediately after this advice. Instead, Defendant asked Agent Coad about how much jail time he faced:

Defendant: "How much . . . how long will I gonna do in jail?

Agent Coad: . . . if you want some consideration for your information, like I can tell the prosecutor, hey you were straightforward, you gave up everything, you told me about this, you told me about that, you told

9

me about this.[8]

However, Agent Coad next stated:

Agent Coad: . . . Now we just gotta worry about saving your ass. And if you want to do the time, dude tell me you want to talk to a lawyer and I'll do this thing. That's fine.

Defendant: I don't want to do no time man.

Agent Coad: I'm telling you man, if you want to do less time, talk to me and we will see what is going on and we will go from there.

Defendant: I want to talk to you.

Promising or suggesting that incriminating statements will result in a lower sentence suffers the same problems as suggesting that "honesty wouldn't hurt." Hart, 323 F.3d at 894. Agent Coad's statements "suggested to [Defendant] that an incriminating statement would not have detrimental consequences while [his reading of Defendant's Miranda rights] suggested (correctly) that an incriminating statement would be presented at [Defendant's] trial as evidence of his guilt." Id. Not only did Agent Coad represent that Defendant's statements would do him no harm; he stated that if Defendant wanted to serve less jail time, he should talk with Agent Coad.[9] On the facts, this case

---

[8] There is no question that Agent Coad was permitted to assure Defendant that the former would "tell the prosecutor" about the latter's cooperation. See Williams v. Johnson, 845 F.2d 906, 909 (11th Cir. 1988). Had Defendant waived his Miranda rights at this point, the totality of the circumstances would weigh in favor of finding the waiver valid. However, that is not the case here.

[9] Although Agent Coad did not go so far as to promise Defendant a fixed reduction in his sentence in exchange for waiving Defendant's Miranda rights, a reasonable inference is that Defendant signed the waiver because of the agent's promise of leniency. Cf. United States v. Sweetenburg, 186 F. App'x 879, 883 (11th Cir. 2006) (per curiam) (finding wavier valid where defendant was not threatened during interview and agent "promised to tell the prosecutor if Defendant cooperated but did not promise leniency"); Williams v. Johnson, 845 F.2d 906, 909 (11th Cir. 1988) (finding confession voluntary where agent "did not promise leniency").

is closer to Hart than to Quinn. Although Defendant initiated the discussion about how much time he faced, his question preceded his agreement to talk with Agent Coad and it preceded any inculpatory statements.[10] The immediacy of his agreeing to talk with Agent Coad after Agent Coad stated that "...if you want to do less time, talk to me..." demonstrates that Agent Coad's statement played a material role in Defendant's decision to waive his rights. While Defendant's age, intelligence, and criminal background certainly made him capable of comprehending his Miranda rights and Defendant did sign a written Miranda waiver, the totality of circumstances fails to meet the Government's burden of demonstrating by a preponderance of evidence that Defendant's waiver of those rights was knowing and intelligent.[11] However, the Government has sufficiently demonstrated that Defendant's statements were not coerced but rather voluntary. There was no physical or mental coercion which accompanied Agent's Coads statements to Defendant about the consequences of waiving his rights. Accordingly, Defendant's statements during his interview with

---

[10] This case is further distinguishable from United States v. Graham, No. 08-14434, 2009 WL 1040133, at *7 (11th Cir. Apr. 20, 2009) (per curiam), where the defendant "came forward and wanted to cooperate, even before the officers asked him any questions." Defendant decided to cooperate in this case only after Agent Coad talked to him.

[11] See e.g. United States v. Liu, Criminal No. 08-15 (ADM/FLN), 2008 WL 1994977, at *16-17 (D. Minn. Apr. 7, 2008) (finding statement was not voluntary because promising that Miranda waiver would allow defendant to avoid spending the night in jail was equivalent to threatening that assertion of Miranda rights would result in confinement); United States v. Pinto, 671 F. Supp 41, 59 (D. Me. 1987) ("The implied promise of nonimprisonment or nonprosecution in exchange for cooperation...made by a police officer without the authority (or, apparently, the intention) to make good on such a promise, effectively prevented defendant from obtaining a correct understanding of his Miranda rights and the implications of a decision to cooperate."); but see United States v. Kilgore, 58 F. 3d 350, 353 (8th Cir. 1995) (refusing to suppress statements where interviewers promised defendant he "would not go to jail *that evening*" because promise of leniency would not alone render confession involuntary); United States v. Mastera, No. Crim. 04-50-P-S, 2004 WL 1770139, at *3 (D. Me. Aug. 6, 2004) (reasoning, where defendant was allegedly threatened with jail if he did not write out a statement, that defendant's familiarity with criminal justice system undermined claim that he believed making statement would avoid prosecution).

Agent Coad on September 17, 2008, as well as the subsequent statements obtained by Agent Hanes and Detective Lazzara, may not be admitted at trial to establish Defendant's guilt.[12] Whether the statements can be used for impeachment purposes is a separate issue. See Michigan v. Harvey, 494 U.S. 344, 351 (1990) ("We have mandated the exclusion of reliable and probative evidence for *all* purposes only when it is derived from involuntary statements.").

## II. Pre-Presentment Delay

In addition to arguing that his waiver of Miranda rights was invalid, Defendant contends that his statements to law enforcement should be suppressed because he was held in custody for approximately twenty-four hours before his presentment to a United States Magistrate Judge (Dkt. 58 at 3). This issue is moot due to the foregoing analysis. However, the court finds it appropriate to address this issue in the alternative.

The requirement "that the police must with reasonable promptness show legal cause for detaining arrested persons, constitutes an important safeguard - not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society." McNabb v. United States, 318 U.S. 332, 343 (1943). "A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise." Rule 5(a)(1)(A), Fed. R. Crim. P.; see Corley v. United States, 129 S. Ct. 1558, 1562-63 (2009). A delay in presentment is not necessary merely because it might present

---

[12] At the evidentiary hearing, the Government focused solely on the recorded interview with the Defendant and Agent Coad; however, the testimony indicated that the interviews with the other two agents followed that of Agent Coad's. The Government has not suggested that separate Miranda warnings were administered by these agents prior to their interviews of Defendant or that other circumstances make the statements Defendant gave these agents independently admissible.

law enforcement an opportunity to extract a confession. Mallory v. United States, 354 U.S. 449, 455 (1957) (holding confession given seven hours after arrest inadmissible where defendant was "arrested in the early afternoon and detained at headquarters within the vicinity of numerous committing magistrates"). This rule "generally render[s] inadmissible confessions made during periods of detention that violat[e] the prompt presentment requirement of Rule 5(a)." Corley, 129 S. Ct. at 1563 (citation and internal quotation marks omitted).

Congress has limited the effect of this rule with respect to confessions obtained within six hours of arrest. In such instances, a confession is admissible, subject to the Federal Rules of Evidence, "so long as it was 'made voluntarily and ... the weight to be given [it] is left to the jury.'" Corley, 129 S. Ct. at 1571 (quoting 18 U.S.C. § 3501(c) (1990)).[13] "If the confession occurred before presentment and beyond six hours, however, the court must decide whether delaying that long was unreasonable or unnecessary under the McNabb-Mallory cases, and if it was, the confession is to be suppressed." Id.

Here, Defendant was arrested sometime after 1:00 p.m. and the interviews at issue were completed by 5:00 p.m. Clearly, Defendant's confession was obtained within the six-hour period

---

[13] Pursuant to 18 U.S.C. § 3501(c), "[i]n any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate judge or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided*, That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer."

prescribed by § 3501(c) and is thus not inadmissible solely due to the delay in presenting Defendant before a United States Magistrate Judge. Nonetheless, § 3501 does not excuse the requirement that a waiver of Miranda rights must be voluntary, knowing, and intelligent. See Dickerson v. United States, 530 U.S. 428, 444 (2000). Accordingly, Defendant's statements are inadmissible despite the provisions of § 3501.

## Conclusion

In light of the totality of the circumstances surrounding Agent Coad's interview of Defendant, Defendant's waiver of his Miranda rights, while voluntary, was not knowing and intelligent. Agent Coad adequately informed Defendant of his Miranda rights but subsequently provided misleading advice concerning Defendant's waiver of rights. Accordingly, Defendant's statements during his interviews with Agent Coad, Agent Hanes, and Detective Lazzara on September 17, 2008 should not be admissible at trial to establish Defendant's guilt.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)  Defendant George Augustus' Motion to Suppress Statements and Request for Evidentiary Hearing (Dkt. 58) be **GRANTED**.

**Date: May 14, 2009**

ELIZABETH A JENKINS
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

**Any party objecting to the report and recommendation shall file a copy of the transcript**

14

**of the evidentiary hearing.**